IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DETLEF CALLENDER,                                    CV. 07-1099-KI

              Petitioner,               OPINION AND ORDER

    v.

GUY HALL, Superintendent, Two
Rivers Correctional
Institution,

              Respondent.

HAROLD DUCLOUX, III
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204

    Attorney for Petitioner

JOHN KROGER
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

    Attorneys for Respondent

KING, Judge

    Petitioner Detlef Callender, an inmate at Two Rivers

Correctional Institution, brings this habeas corpus proceeding

1 - OPINION AND ORDER

pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the petition is denied, and this proceeding is dismissed.

<u>**BACKGROUND**</u>

On June 20, 2000, petitioner was indicted on multiple counts of rape, sodomy, and sexual abuse.  The incidents arose on two separate occasions involving the same victim, "T.C.," who was 19 years old at the time.  The state's main theory of the case was that T.C. lacked the ability to "appraise the nature of her conduct" to consent to sex under the statutes.  O.R.S. §§ 163.375(1), 163.405(1), 163.427(1).

At trial, T.C. testified that on March 10, 2000, she spent the night at the home of her friend, Marcie Sichting.  T.C. testified that she came to know Sichting through the Special Olympics, where they both trained for track events. (Tr. 133-34.) Petitioner was Sichting's boyfriend at that time.  T.C. testified that at that sleepover, she slept on the floor in Sichting's bedroom, while petitioner slept in the bed with Sichting.  T.C. testified that she was awakened by petitioner, who had inserted his finger into her vagina. (<u>Id.</u> at 138-39.)  T.C. stated that petitioner stopped because Sichting told him to stop. (<u>Id.</u> at 142.)  T.C. further testified that she spent the remainder of the night in the bed with Sichting, and that petitioner slept in the living room.  (<u>Id.</u>)

T.C. testified that on March 19, 2000, she spent a second night at Sichting's house.  T.C. testified that she and Sichting

slept in the bed together, while petitioner slept on a chair in the living room. (Id. at 145.)   T.C. stated that she was awakened during the night by petitioner biting and touching her breasts, then petitioner left the bedroom.  (Id. at 145.)   T.C. said that she was awakened a second time when petitioner pulled down her sweat pants, and touched her breasts and vagina.  (Id. at 155-56.) T.C. stated that petitioner touched his penis to her thigh, licked her vagina, and tried to put his penis into her vagina, but "it didn't work." (Id. at 148-49, 154, 155.)   T.C. testified that she told petitioner to stop, but petitioner did not stop until Sichting told him to stop. (Id. at 157.)

Sichting   confirmed   T.C.'s   version   of   events.   Sichting testified that on the first night, she woke up and saw petitioner over T.C. and heard T.C. say "no."  (Id. at 222.)   Sichting also testified that another time she woke up and petitioner was on top of T.C. "playing with up top and probably down there." (Id.) Sichting  said  that  although  she  could  not  see,  she  thought petitioner was trying to put his penis in T.C.  Sichting further testified that in the morning, T.C.'s pants were down and she was crying. (Id. at 224.)

Keith Murdock, a school psychologist who had worked with T.C. for a number of years, testified that T.C. had an IQ between 40 and 47; that her last testing indicated she was functioning at about a first grade level; she was educatable; and that she may be able to

live independently in an apartment or group home some day. (Id. at 240-245.) Murdock testified that T.C. needed lots of repetition, and that her reasoning ability was very low. (Id. at 245.) Murdock further testified that he believed T.C. was unable to understand the nature of her behavior in a sexual context because that type of situation would not have been repeated sufficiently. (Id. at 258.)

T.C.'s mother, Sherrill Christoferson, testified that when she picked up T.C. on the morning of March 20, 2000, T.C. was upset. Christoferson testified that T.C. had been involved with special education from the time she was two years old. Christoferson also testified that T.C. was not yet able to live independently because she could not manage money, cook, or make difficult decisions. (Id. at 268-69.)

Officer Roger Craddock testified that he interviewed T.C. after receiving the report about the sexual contact on March 20, 2000. Craddock testified that although T.C. does not appear visually to have a disability, her disability quickly became apparent during his interview. Craddock stated that T.C. told him about what happened, but when he asked whether petitioner had ejaculated, T.C. had no idea what that meant, nor could she understand his attempt to explain it to her.

Craddock interviewed petitioner at his place of work. Craddock testified that petitioner admitted that he had fondled

T.C. and had oral sex with her, but that petitioner thought the contact was consensual. Craddock testified that after arresting petitioner, petitioner admitted to inserting his fingers into T.C.'s vagina on March 10, and fondling T.C.'s vagina, licking her vagina, and rubbing his penis against her vagina on March 19. Craddock also testified that petitioner told him that his semen may be in or on T.C. because petitioner had masturbated just prior to going into the bedroom on March 19. (<u>Id.</u> at 314.) Craddock testified that when asked whether he knew that T.C. was handicapped, petitioner responded that he thought she might be "slow." (<u>Id.</u> at 319.)

The defense presented testimony from Gary Gregor, a clinical psychologist, who testified that he believed T.C. had the ability to make choices about her sexual life. Dr. Gregor testified that T.C. understood body parts clearly, denied previous sexual intercourse, was able to answer questions about sexual intercourse, and therefore could appraise the nature of her conduct, including sexual conduct. (Tr. 198-99.)

Petitioner also testified in his defense. Petitioner testified that Sichting informed him that T.C. wanted sexual experiences, and that Sichting wanted him to have sexual contact with T.C. Petitioner stated that he, Sichting, and T.C. had sexual discussions. Petitioner testified that he thought it was okay to have sex with T.C. "because of the way she portrayed herself." (<u>Id.</u>

at 388.)  On cross-examination, petitioner admitted that T.C. never said that she wanted to have sex with him, and that T.C. was non-responsive to his advances.  (Id. at 393-94.)  Petitioner also admitted that he had been convicted of attempted rape and first-degree sexual abuse in 1984.  (Id. at 399.)  The defense also presented several witnesses who said that petitioner was truthful, and another witness who testified that she saw T.C. behaving in an inappropriately flirtatious manner on one occasion.

Petitioner was convicted by the jury of four counts of Sexual Abuse in the First Degree, and one count each of Sodomy in the First Degree, Attempted Rape in the First Degree, and Sexual Abuse in the Second Degree.  (Ex. 101.)  Petitioner received a 295-month sentence.  (Ex. 101 & 109.)

Petitioner filed a direct appeal challenging the sufficiency of the evidence to support a finding that T.C. was "mentally defective" and instructions to the jury that it should consider the facts and circumstances surrounding the victim's conduct when determining her inability to consent by reason of mental defect. The Court of Appeals affirmed petitioner's conviction, and the Oregon Supreme Court denied review.  State v. Callender, 181 Or.App. 636, 47 P.3d 514 (2000), rev. denied, 334 Or. 632 (2002).

Petitioner filed a state post-conviction proceeding alleging numerous claims of ineffective assistance of trial and appellate counsel, and that his sentence was unconstitutional.  The post-

conviction court denied relief. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Callender v. Hall, 221 Or.App. 147, 153 P.3d 712, rev. denied, 343 Or. 115 (2007).

## DISCUSSION

In his petition, petitioner asserts one ground of insufficient evidence and three grounds of ineffective assistance of counsel. Respondent moves to deny habeas corpus relief on the basis that grounds one and two are procedurally defaulted and, alternatively, that the state court's denial of grounds two, three and four are entitled to deference under 28 U.S.C. § 2254(d). In the briefing to this court, petitioner discusses only the merits of grounds two, three and four.

## I.   **Procedural Default**.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 915-56 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).

A fair presentation requires a prisoner to state the facts that entitle him to relief, and to reference the federal source of the law on which he relies, or a case analyzing the federal constitutional guarantee on which he relies, or to simply label his claim "federal." Baldwin, 541 U.S. at 32; Gray v. Netherland, 518 U.S. 152, 162-63 (1996). When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. Casey, 386 F.3d at 920; Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Cook v. Schriro, 538 F.3d 1000, 1025 (2008), cert. denied, 129 S. Ct. 1033 (2009).

In ground one, petitioner alleges that there was "insufficient evidence to support [a] finding that the victim was mentally defective and thus incapable of consent." Even assuming arguendo that ground one properly alleges a basis for federal habeas relief, it was raised on direct appeal as a state law claim only. (Resp. Ex. 103.) See Callendar, 181 Or.App. at 640-646. Because petitioner has failed to present ground one to the state's highest court and can no longer do so, it is procedurally defaulted. See O.R.S. §§ 138.071(1), 138.510(3); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999); Coleman, 501 U.S. at 731-31. Petitioner offers no basis to excuse his procedural default, or contend that failure to consider ground one will result in a miscarriage of justice.

In ground two(a), petitioner alleges that counsel provided ineffective assistance by failing to request that his expert witness be present during T.C.'s testimony. In ground two(b) and (c), petitioner argues counsel was ineffective for failing to object to the impeachment of his character witnesses' testimony with his prior convictions and the prosecutor's statements during closing. Respondent contends that ground two is procedurally defaulted because those claims were not "fairly presented" in petitioner's briefing to the Oregon Court of Appeals or Oregon Supreme Court. Respondent also argues that Oregon Rule of Appellate Procedure 9.05(4)(b) requires petitioner to specify a discrete "question presented" to the Oregon Supreme Court concerning Dr. Gregor's presence during the victim's testimony. I disagree.

In his petition for review to the Oregon Supreme Court, petitioner expressly adopts the arguments presented in his appellant's brief to the Oregon Court of Appeals. (Ex. 127 p. 2.) In that briefing, petitioner quoted verbatim the six ineffective assistance claims made to the PCR court, including reference to Dr. Gregor's presence in the courtroom, and the prosecutor's references to his prior convictions. (Id. at 12-13.) In his Court of Appeals briefing, petitioner also relied upon the Sixth and Fourteenth Amendments to the U.S. Constitution, and cited Ninth Circuit case law discussing the Strickland standard for ineffective assistance

of counsel. (<u>Id.</u> at 12, 20-21.)  Because state law expressly permits incorporation by reference, petitioner has not procedurally defaulted ground two.  <u>Brown v. Blacketter</u>, 2009 WL 4891952, * 3 (D. Or. Dec. 17, 2009); <u>Farmer v. Baldwin</u>, 346 Or. 67, 73-74, 205 P.3d 871 (2009).

## II. <u>Merits of Petitioner's Ineffective Assistance of Counsel Claims</u>.

## A. **Standards**.

Under 28 U.S.C. § 2254(d), federal habeas corpus relief may not be granted on a claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under <u>Strickland v. Washington</u>, to prevail on a claim of ineffective assistance of counsel, petitioner must show that (1) his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  466 U.S. 668, 687 (1984); <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 390 (2000).  Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficiency of performance, petitioner must demonstrate that counsel's performance fell below an objective

standard of reasonableness.  Strickland, 466 U.S. at 688.  There is
a strong presumption that the counsel's conduct falls within a wide
range of reasonable professional assistance.  Id. at 689.
Reasonableness is determined as of the time of counsel's conduct,
not in hindsight.  Id. at 689-90.

     To establish prejudice, petitioner must show that there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.
Bell, 535 U.S. at 695; Williams, 529 U.S. at 390-91; Strickland,
466 U.S. at 687, 694.  "'A reasonable probability is a probability
sufficient to undermine confidence in the outcome.'"  Williams, 529
U.S. at 391 (quoting Strickland, 466 U.S. at 694).

     Section 2254(e)(1) provides that "a determination of a factual
issue made by a State court shall be presumed to be correct," and
this presumption of correctness may be rebutted only by "clear and
convincing evidence."  28 U.S.C. § 2254(e)(1).

**B.   Analysis of Ground Three—Failure to Investigate.**

     Petitioner asserts that trial counsel was ineffective when he
failed to locate witnesses who would have supported his defense of
mistake of fact concerning T.C.'s ability to consent.[1]  According

---

     [1]Although petitioner appears to suggest that the PCR made an
unreasonable determination of the facts under 28 U.S.C. §
2254(d)(2), he fails to identify what specific information was
overlooked or ignored.  (Memorandum in Support (#33) p. 23-24.)
See generally Taylor v. Maddox, 366 F.3d 992 (9th Cir.), cert.
denied, 543 U.S. 1038 (2004).  Because petitioner directs his

to petitioner, counsel was constitutionally deficient when he failed to discover and present information from four witnesses whom he asserts had "substantive information" about T.C.'s knowledge of sexual matters.[2]

Regardless of trial counsel's performance, petitioner has failed to establish that a reasonable probability exists that he would have been acquitted absent trial counsel's failure to present information from witnesses McNew, Sanderlin, Neptune and Gage. See Strickland, 466 U.S. at 697 (both Strickland prongs need not be addressed if there is an insufficient showing on one). In evaluating proof of prejudice, this court "must consider the totality of the evidence" before the jury. Strickland, 466 U.S. at

_____

arguments concerning ground three to an unreasonable application of Strickland, this court analyzes the claim under § 2254(d)(1).

[2]At the post-conviction proceeding, petitioner presented affidavits of Hazel McNew, Phyllis Sanderlin, Diane Neptune, and Lovena Gage. McNew, T.C.'s step-mother, averred that based upon her 18-year relationship with T.C., she feels T.C. understands enough about sexual matters to consent to sex. (Ex. 114.) Sanderlin attested that she taught sex education to T.C. as part of a home economics course at school. Sanderlin averred that T.C. demonstrated a thorough knowledge of the human sexual anatomy, mechanics and function, and that T.C. had sharp social adaption skills. (Ex. 115.)

Neptune, T.C.'s adopted sister, attested that T.C. has good social skills and that T.C.'s understanding of "sex and the consequences of sexual behavior" was equal to her own. Neptune averred that T.C. understands the difference between male and female sex organs, and that the union of a sperm and egg can result in pregnancy. (Ex. 116.) Gage, the niece of Diane Neptune and T.C.'s friend, attested that T.C. is "very knowledgeable regarding sex and sexual matters" and could consent to sexual activity. (Ex. 117.)

696.  Ineffective assistance of counsel claims based on a duty to investigate must be considered in light of the strength of the government's case. Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir.), amended on denial of r'hrg, 253 F.3d 1150 (2001).

The evidence concerning T.C.'s inability to consent was overwhelming. Keith Murdock testified that T.C.'s IQ was between 40 and 47, rendering her severely retarded; that her intellectual functioning was just beyond the first grade; and that her reasoning and ability to think abstractly were extremely poor. (Tr. 240-45.) There was evidence that T.C. had been in special education since preschool and participated in the Special Olympics. Officer Craddock testified that it was obvious to him that T.C. had a mental disability, and that petitioner admitted T.C. might be "slow."

Likewise, the evidence concerning petitioner's guilt was overwhelming. Petitioner admitted to the sexual contact with T.C., but contended the contact was consensual. Petitioner's description of events was that he believed T.C. wanted to "fool around" because his girlfriend, Sichting, told him so. (Tr. 369.) But petitioner's testimony was plainly controverted by T.C. and Sichting. Sichting denied ever asking petitioner to engage in sexual contact with T.C., and T.C. denied ever engaging in sexual discussions with petitioner. Indeed, petitioner admitted on cross-examination that T.C. never indicated a desire for sex with him.

Moreover, T.C. testified that petitioner initiated the contact while she was *sleeping*, which was confirmed by Sichting. During his direct testimony, petitioner testified that he believed T.C. wanted to have sex with him because she "did not object" to his advances. Yet, petitioner admitted that she was "nonresponsive" to his touch. (Tr. 370-71.) Both T.C. and Sichting testified that petitioner did not stop touching T.C. until Sichting told him to stop. (Tr. 142, 152.)

Against this backdrop, the evidence from McNew, Sanderlin, Neptune, and Gage is comparatively weak. To be sure, none of the affiants offer any specific, exculpatory information. Cf. Riley v. Payne, 352 F.3d 1313, 1317-18 (9th Cir. 2003), cert. denied, 543 U.S. 917 (2004)(uncalled witness would have corroborated self-defense claim). The substance of the proffered affidavits was that T.C. understood sexual anatomy, sexual mechanics and pregnancy, and that in the opinions of the affiants, T.C. could consent.[3] However, information concerning T.C.'s understanding of sexual mechanics and pregnancy was largely cumulative of other evidence presented at trial. During her testimony, T.C. described petitioner's actions using accurate anatomical terminology, and testified that she understood how pregnancy occurs, and that people

---

[3]There is some question as to how much information from the affiants would have been admissible at trial. The PCR court struck some of the statements from the affidavits. (Ex. 125 p. 11-16.) For purposes of this opinion, the court has viewed the affidavits in the light most favorable to petitioner.

can get AIDS from sex.  (Tr. 175.)  T.C.'s mother testified that she had discussions with T.C. about sex, and that T.C. took sex education courses at school. (Tr. 280, 283.)  Moreover, petitioner's expert offered his opinion that because T.C. understood sexual anatomy and could answer questions about sexual intercourse, she was capable of appraising the nature of her conduct and thus could consent to sex.  (Tr. 198-99.)

Given the totality of evidence presented at trial, there is no reasonable probability that, but for counsel's failure to present testimony from the four witnesses, the result of the proceeding would have been different.  Accordingly, the PCR court's rejection of ground three was neither contrary to, nor an unreasonable application of Strickland.  28 U.S.C. § 2254(d)(2).

## C.   Analysis of Ground Two(a)—Dr. Gregor's Presence During the Victim's Testimony.

Petitioner contends that counsel was ineffective when failing to request permission from the trial court to have petitioner's expert, Dr. Gregor, be present during T.C.'s trial testimony. Petitioner argues that trial counsel's failure to provide Dr. Gregor with additional school records, counseling records, and the affidavits of McNew, Sanderlin, Neptune and Gage impeded Dr. Gregor's ability to fully develop his opinion.  Petitioner also asserts that the PCR court's factual finding that Dr. Gregor was given an opportunity to attend, but declined, was unreasonable in

light of the evidence presented.  Respondent argues that the state court's rejection of this claim is entitled to deference under 28 U.S.C. § 2254(e)(1).

At the post-conviction proceeding, petitioner presented an affidavit from Dr. Gregor.  Dr. Gregor attested that observing T.C. would have provided important information upon which to base his opinion: including, aiding him in assessing T.C.'s level of functioning, assisting him in formulating additional lines of inquiry for counsel, and aiding him in distinguishing T.C.'s adaptive functioning and intellectual functioning. (Ex. 113 p. 4.) Dr. Gregor also attested that "there is nothing in my records indicating counsel discussed having me present during [the victim's] testimony." (Id. at 5.)  Lastly, Dr. Gregor averred that he had been present during a victim's testimony in a separate trial and found it helpful.  (Id.)

In contrast, petitioner's trial counsel provided an affidavit in which he states that it was his recollection that Dr. Gregor advised him prior to trial that "he did not wish to sit in the trial and observe [the victim] testify" as Dr. Gregor felt it would not be of value.  (Ex. 120.)  Additionally, Dr. Gregor provided a supplemental affidavit in the post-conviction proceeding. (Ex. 124.)  In that supplemental affidavit, Dr. Gregor averred that "[i]t is possible that at the time of Detlef Callender's case, I would have told Mr. Campbell that I would not have found it helpful

to observe the victim testify.  I simply do not remember any conversation of that kind in this case." (Id. at 2.)

Based on the foregoing, the PCR court made the following findings of fact:

> And I find that counsel did supply [Dr. Gregor] with substantial records relating to [T.C.'s] background.  I find that the opportunity was given to Dr. Gregor as to whether or not he wished to sit in the courtroom to appraise the testimony of the victim, the person to whom he was going to evaluate (sic).  And he made a choice not to do so.  (Ex. 125, p. 28-29.)

Petitioner has not presented any new evidence in this proceeding, thus the evidence is confined to the record presented to the state PCR court.  In conducting this type of intrinsic review, a federal court may not second-guess a state court's fact finding, unless it concludes that the state court was not merely wrong, but actually unreasonable.  Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).  It is not enough that I would conclude differently under similar circumstances; I must be convinced that *no court* could reasonably conclude that the findings are supported by the record.  Id. at 1000.

Petitioner has failed to meet this burden.  When the PCR court's factual findings are viewed as whole, it is clear that the court did not ignore Dr. Gregor's affidavits.  On the contrary, when Dr. Gregor's second affidavit is considered in conjunction with that of attorney Campbell, the PCR court's factual

determination that Dr. Gregor was given an opportunity to sit in on the victim's testimony but declined to do so is amply supported by the record.  <u>Taylor</u>, 366 F.3d at 1000; <u>Weaver v. Palmateer</u>, 455 F.3d 958, 965 (9th Cir. 2006), <u>cert. denied</u>, 128 S. Ct. 177 (2007). Accordingly, that finding is entitled to deference under 28 U.S.C. § 2254(e)(1).

Petitioner also complains that the PCR court did not discuss the fact that Campbell's affidavit did not refute that Dr. Gregor was not provided with additional educational and counseling records, as well as the affidavits of the McNew, Sanderlin, Neptune and Gage.  The PCR court does not need to address every "jot and tittle" of information.  <u>Taylor</u>, 366 F.3d at 1001.  In Dr. Gregor's supplemental affidavit, he specifically averred that the additional materials about which petitioner now complains would *not* have changed the opinion he provided at trial. (Ex. 124.)  Accordingly, petitioner is unable to establish that the evidence allegedly overlooked by the PCR court was "highly probative and central" to his ineffective assistance of counsel claim concerning Dr. Gregor. <u>Taylor</u>, 366 F.3d at 1001.

In light of the PCR court's finding that Dr. Gregor was given an opportunity to attend, but declined to do so, petitioner has failed to establish that counsel's performance was deficient.  <u>See</u> <u>Wildman v. Johnson</u>, 261 F.3d 832, 838 (9th Cir. 2001)(performance not deficient where counsel could reasonably rely upon expert's

initial investigation).  Even assuming *arguendo* that counsel's performance was deficient, his claim fails because he is unable to demonstrate prejudice.

To show prejudice, petitioner relies heavily on Dr. Gregor's initial affidavit, contending that his presence during the trial would have provided a "critical basis" for presenting his opinion and that he could have aided counsel in formulating better questions. (Ex. 113.) However, petitioner seemingly ignores the supplemental affidavit in which Dr. Gregor states that he may have told counsel that observing T.C. would not have been helpful. (Ex. 124 p. 2.)  And more significantly, Dr. Gregor averred that nothing in the materials he was provided with during the post-conviction proceeding would have changed his opinion.  (Id.)

At best, Dr. Gregor's conflicting affidavits establish that his opinion about T.C.'s ability to appraise the nature of her conduct *may* have been more precise if he had been given the opportunity to view T.C.'s testimony.  However, under the circumstances of this case, such speculation does not establish a reasonable probability that the outcome would have been different. See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997)(speculation about expert witness testimony will not establish prejudice); Wildman, 261 F.3d at 839 (same).

As discussed at length above, the evidence against petitioner was overwhelming, as was the evidence concerning T.C.'s inability

to consent.  Given the great weight of the evidence against him, petitioner has failed to demonstrate a reasonable probability that he would have been acquitted if Dr. Gregor had been permitted to observe T.C.'s testimony and *perhaps* offer a more precise opinion about T.C.'s ability to appraise the nature of her conduct. Accordingly, the PCR court did not unreasonably apply <u>Strickland</u> when it rejected ground two(a).

**D.   Grounds Two(b) and (c)—failing to Object to Impeachment With Prior Convictions.**

Petitioner alleges that his trial counsel was ineffective when he failed to object to prosecutor's cross-examination of his character witnesses with his prior felony convictions, or to prosecutor's reference to him as a "convicted sex offender" during closing argument.  Although petitioner concedes that he could be impeached with his prior convictions, petitioner argues that when the prosecutor asked his character witnesses about his prior "sex crimes," it was objectionable and that counsel should have asked for a curative instruction after each incident.  Petitioner also complains that his own attorney referred to him as a "convicted sex offender" when attempting to rehabilitate him.  Respondent argues that the PCR court's determination is entitled to deference.  28 U.S.C. § 2254(e)(1).  Respondent is correct.

To prevail on his claim of ineffective assistance, petitioner must show that his trial counsel's failure to object the

prosecutor's statements and impeachment of his character witnesses fell outside the range of professionally competent assistance, and that his failure to do so prejudiced his defense. Dubria v. Smith, 224 F.3d 995, 1003-04 (9th Cir. 2000), cert. denied, 531 U.S. 1148 (2001); Strickland, 466 U.S. at 687.

In the instant case, the PCR court determined that the prosecutor did not use petitioner's prior convictions to suggest that petitioner was guilty in the present case. (Ex. 125, p. 31.) The PCR court also determined that trial counsel requested, and the jury was given, an instruction limiting the jury's consideration of the prior convictions to their bearing on petitioner's credibility. (Ex. 125, p. 31, Tr. 460.) Petitioner has failed to rebut these findings with clear and convincing evidence, and thus they are accorded a presumption of correctness. 28 U.S.C. § 2254(e)(1).

In light of these factual findings, petitioner is unable to establish that counsel's performance fell below an objective standard of reasonableness. Given that the prosecutor's comments did not improperly suggest propensity or constitute "bad acts evidence," petitioner has failed to show that trial counsel's failure to object or seek a curative instruction rendered deficient performance. Dubria, 224 F.3d at 1004.[4]

---

[4]Petitioner's assertion that the prosecutor's comments were so inflammatory to constitute a denial of due process has not been exhausted, and thus is not properly before this court. 28 U.S.C. § 2254(b); Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004), cert. denied, 545

Furthermore, petitioner has failed to establish that counsel's efforts to rehabilitate his testimony fell below an objective standard of reasonableness. Petitioner was forewarned by the trial judge that he would be impeached with his prior convictions should he decide to testify. (Tr. 66-67.) After taking the stand and being impeached with his convictions, trial counsel called character witnesses in an effort to rehabilitate petitioner. Those witnesses testified that petitioner was truthful, and that their opinions of petitioner's truthfulness were not affected by petitioner's prior convictions. (Tr. 430, 433, 437-38.) See Gonzalez, 515 F.3d at 1015 (counsel's decision not to call certain witnesses was a reasonable trial tactic and not deficient performance). Accordingly, petitioner has failed to demonstrate that the PCR court's rejection of ground two (b) and (c) is contrary to, or an unreasonable application of Strickland. 28 U.S.C. § 2254(d).

**E.    Ground Four-Apprendi/Blakely.**

Petitioner asserts that counsel was ineffective when he failed to object to his sentence based upon Apprendi v. New Jersey, 530 U.S. 466 (2000) and its progeny. According to petitioner, because Apprendi was decided June 26, 2000 and he was sentenced on July 11, 2000, competent trial and appellate counsel would have objected to his upward departure based on persistent involvement, as well as

U.S. 1146 (2005).

the consecutive sentences imposed for separate incidents of conduct.[5]

Petitioner's arguments fail. Even though Apprendi was determined just prior to petitioner's sentencing, at that time, Oregon courts were interpreting Apprendi to apply only to the *statutory maximum*, and not to sentencing guideline departures or consecutive sentences, as argued by petitioner. See Peralta-Basilio v. Hill, 203 Or.App. 449, 453 (2005), rev. denied, 340 Or. 359 (2006); Buffa v. Belleque, 2009 WL 3698106, *6 (D. Or. Nov. 9, 2009); Wade v. Belleque, 2009 WL 4048082, *6 (D. Or. Nov. 18, 2009). "Indeed, before Blakely was decided, 'virtually every single federal circuit court' concluded that 'a departure from a presumptive sentence did not run afoul of Apprendi as long as the upward departure was authorized under the sentencing guidelines and did not exceed the statutory maximum' for the crime." Buffa, 2009 WL 3698106 at *7 (quoting Peralta-Basilio, 203 Or. App. at 453-54). Petitioner does dispute that his sentence was within the statutory maximum and guideline amount.

_____

[5]Although petitioner argues in his supporting memorandum that his sentences are unlawful under Apprendi and Blakely, his direct claim is not contained in his petition and therefore is not properly before this court. See Rule 2(c), Rules Governing Section 2254 Proceedings, 28 U.S.C. foll. § 2254 (requiring each habeas petition to specify all grounds for relief); Greene v. Henry, 302 F.3d 1067, 1070 n.3 (9th Cir. 2002)(claims not raised in the petition need not be considered). In any event, it is well-settled that Blakely cannot be applied retroactively to aid petitioner. Schardt v. Payne, 414 F.3d 1025, 1036 (9th Cir. 2005); Wade, 2009 WL 4048082 at *6.

Furthermore, the U.S. Supreme Court has determined that the imposition of consecutive sentences under Oregon's sentencing guidelines does not implicate the Sixth Amendment right to a jury. Oregon v. Ice, 129 S. Ct. 711, 719 (2009). Thus, given the status of the law at the time when petitioner was sentenced, counsel cannot be deemed ineffective for making arguments that surely would not have succeeded. Buffa, 2009 WL 3698106 at *7; Schardt v. Payne, 414 F.3d 1025, 1036 (9th Cir. 2005); Peralta-Basilio, 203 Or. App. at 454-55. Accordingly, the PCR court's rejection of ground four was neither contrary to, nor an unreasonable application of, Strickland. Accord Dunn v. Hill, 2008 WL 1967723 (D. Or. May 5, 2008), aff'd, 307 Fed.Appx. 83, cert. denied, 129 S.Ct. 2798 (2009).

In the reply, petitioner suggests that the PCR court applied only the state standard to reject his claims, or alternatively, unreasonably applied Strickland using the benchmarks of "misbehavior, dereliction, inappropriateness, and clairvoyance" to evaluate counsel's performance. (Reply #44, p. 8-9.)

The PCR court ruled orally from the bench at the conclusion of the PCR proceeding. While the PCR court did use the terms noted above, the PCR court also evaluated whether counsel provided "inadequate assistance" under the state standard, and whether counsel's performance was "reasonable," presumably under the

federal standard.  (Ex. 125 p. 29, 30.)  Additionally, the PCR court discussed that Apprendi and Blakely were not retroactive.[6]

Although the PCR court's ruling could have been more articulate, petitioner has not demonstrated that the PCR court's evaluation of counsel's performance contravenes federal law. Williams, 529 U.S. at 388.  Indeed, a state court need not cite or even be aware of governing Supreme Court cases, "so long as neither the reasoning nor the result contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); Powell v. Galaza, 328 F.3d 558, 563 (9th Cir. 2003); see also DeWeaver v. Runnels, 556 F.3d 995, 1002 (9th Cir.), cert. denied, 130 S.Ct. 183 (2009)(upholding state court decision because the reasoning and result were in accordance with federal standard).  After carefully reviewing the transcript of the post-conviction hearing in its entirety, petitioner has not demonstrated that the PCR court's decision is contrary to well-established federal law, and therefore habeas relief is not warranted. Early, 537 U.S. at 8.

////

////

////

////

---

[6]There appear to have been audio difficulties at the PCR hearing, as the transcript contains several instances where statements were inaudible.  Moreover, there are numerous misspellings in the transcript-i.e., "aprende" and "recollective." (Ex. 125 p. 33.)

## **CONCLUSION**

Based on the foregoing, petitioner's petition for writ of habeas corpus (#1) is DENIED, and this proceeding is DISMISSED, with prejudice.

Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.  See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ___8th___ day of April, 2010.


                                        /s/ Garr M. King_____
                                        Garr M. King
                                        United States District Judge